**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Faisal Hassan Abdi,

                      Plaintiff,

                                                Civ. No. 12-1641 (RHK/SER)
                                                **MEMORANDUM OPINION
                                                AND ORDER**

v.

United States Citizenship and
Immigration Services, *et al.*,

                      Defendants.

William L. Libby, St. Louis Park, Minnesota, for Plaintiff.

Jeffrey S. Robins, Durwood H. Riedel, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., Gregory G. Brooker, Assistant United States Attorney, Minneapolis, Minnesota, for Defendants.

**INTRODUCTION**

      Plaintiff Faisal Hassan Abdi is a native of Somalia. He moved to the United States in 2005 and, after waiting the required five-year period, filed an application for naturalization as a United States citizen. The application was denied, as was his request for administrative review. Abdi then commenced this action against Defendants United States Citizenship and Immigration Services ("CIS") and several government officials, asserting that the decision should be reversed and his application granted. Defendants now move to dismiss or, in the alternative, for summary judgment. For the reasons that follow, their Motion will be granted.

## BACKGROUND

The pertinent facts are undisputed. Abdi was born in Somalia in 1987. In 2005, when he was nearly 18 years old, he moved to Minnesota and became a lawful permanent resident of the United States.

Over the ensuing years, Abdi had several run-ins with the law. For example, police reports from May 2007, with which Abdi does not quarrel, indicate that he was part of a group that hurled rocks from a parking ramp toward a police officer effecting a traffic stop. He fled (along with the rest of the group) when officers approached. He eventually encountered an officer who ordered him to halt at gun point, but he continued running. The officer then threatened to Taser him, but he still did not stop. Ultimately, Abdi was chased through seven levels of the parking ramp before finally being apprehended in an alleyway nearby, although he continued resisting as he was being arrested. He was later charged with fleeing a police officer, a misdemeanor, and he pleaded guilty in December 2008. He was sentenced to time served (four days' incarceration) and one year of probation, with the sentence stayed during the pendency of the probation period. After Abdi successfully completed probation, the conviction was dismissed.

Abdi also was arrested in October 2007 for giving a false name to a police officer when his vehicle was pulled over. He pleaded guilty to that charge in December 2008 and was sentenced to one year of probation, with the sentence stayed during the pendency of the probation period. After he successfully completed probation, this conviction also

was dismissed. The record further reflects that Abdi was arrested at least two additional times in 2008 and 2009, although the exact number of times is unclear.[1]

On April 19, 2010, Abdi filed a naturalization application with CIS. One question on the application form asked whether he had ever been arrested, and he answered in the affirmative. Yet, he failed to list all of his arrests, and he mentioned that only one (not two) had resulted in a conviction. (See Def. Ex. 8.)

On July 23, 2010, CIS interviewed Abdi and requested that he provide "certified copies of [his] police arrest record[s], including court proceedings and final disposition." (Def. Ex. 6.)[2] Although he provided some records in response to this request, they were incomplete and uncertified. (Id.; Mem. in Opp'n at 3.) As a result, on July 11, 2011, CIS denied the application, concluding that Abdi had "failed to establish . . . the good moral character requirements for naturalization" due to his "failure to comply with [CIS's] request for additional information." (Def. Ex. 6.)[3]

Abdi then requested a review hearing under 8 C.F.R. § 336.2(a). He submitted additional certified records from his arrests in advance of that hearing, but he did not

---

[1] Defendants assert that Abdi was arrested *four* additional times, discussing two such arrests in detail (receiving stolen property and disorderly conduct) in their opening brief. (See Def. Mem. at 2-3; Def. Ex. 1 at 2.) Abdi asserts that he was arrested *three* additional times, including the stolen-property and disorderly-conduct arrests. (See Mem. in Opp'n at 3-5.) Regardless, it is undisputed that none of these additional arrests resulted in an adjudication of guilt, and all charges were eventually dropped.

[2] "Subsequent to the filing of an application for naturalization, [CIS] shall conduct an investigation of the applicant," including an "in person" examination at which the applicant is questioned under oath. 8 C.F.R. § 335.1-.2.

[3] The Immigration and Naturalization Act ("INA") requires an applicant to establish he "has been . . . a person of good moral character" for the five-year period preceding his application in order to obtain citizenship. 8 U.S.C. § 1427(a)(1), (3).

provide all the documents CIS had requested.  (See Def. Ex. 7.)  At the hearing, he acknowledged his arrest record but denied being part of a gang.  He testified that he was "no longer hanging out with the same people" and was "connecting more with family." (Def. Ex. 1.)  He also testified that he was taking classes at Minneapolis Community & Technical College.  (Id.)

On March 6, 2012, CIS upheld the denial of Abdi's application, concluding that he had not shown good moral character because of (1) his failure to provide all requested records and (2) his "unlawful acts and aberrant behavior committed during the five-year statutory period."  (Id.)  It further concluded that the positive steps Abdi had taken in his life did not "erase" his prior criminal history.  (Id.)

Abdi then commenced the instant action against CIS and the Department of Homeland Security (of which CIS is a part), as well as several government officials.[4]  He asserts that CIS's decision should be reversed and his naturalization application granted. Defendants now move to dismiss or, in the alternative, for summary judgment.

## STANDARD OF DECISION

As noted above, Defendants have moved to dismiss Abdi's Complaint for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alterative, for summary judgment under Federal Rule of Civil Procedure 56.[5]  Although Abdi addressed

---

[4] Alejandro Mayorkas, CIS's director; Sharon Dooley, the director of CIS's St. Paul, Minnesota field office; and Secretary of Homeland Security Janet Napolitano.

[5] In their Reply, Defendants for the first time argue that the Court lacks subject-matter jurisdiction over this action because Abdi failed to exhaust administrative remedies, by not submitting requested documents to CIS. (Reply at 3-5.)  Although the Court ordinarily "does not

each standard in his opposition brief (Mem. in Opp'n at 5-7), he has submitted material beyond the pleadings with his Motion papers (Doc. No. 20), and he argues *inter alia* that fact issues preclude dismissal at this stage of the proceedings. (Mem. in Opp'n at 19, 23.) Accordingly, the Court will treat the Motion as one for summary judgment.

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible

---

consider arguments raised for the first time in a Reply," Berbig v. Sears Roebuck & Co., 568 F. Supp. 2d 1033, 1040 n.10 (D. Minn. 2008) (Kyle, J.); accord D. Minn. LR 7.1(b)(3), challenges to subject-matter jurisdiction may be raised at any stage of the proceedings, even on appeal, Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-02 (1982). Hence, the Court will address this argument, which nevertheless fails. Although Abdi did not submit all requested documents to CIS, the agency denied his application both for that failure *and* because his criminal history showed he lacked "good moral character" – in other words, *on the merits*. (See Doc. No. 1.) That is consistent with CIS regulations providing that failure to submit documents will not automatically lead to denial of a naturalization application, but rather leaves the agency to adjudicate the application based on the incomplete record before it. See 8 C.F.R. § 335.7 ("[In] the event that the applicant fails to respond within 30 days of [a request for documents], USCIS will adjudicate the application on the merits."). Accordingly, the Court cannot conclude under the facts here that Abdi failed to exhaust. See Khawaja v. Mueller, Civ. A. No. H-11-3603, 2012 WL 1857849, at *2-3 (S.D. Tex. May 21, 2012) (rejecting argument that court lacked subject-matter jurisdiction for failure to exhaust where applicant did not submit all requested documents, as CIS adjudicated application on the merits).

evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

The INA provides that any "person whose application for naturalization . . . is denied . . . may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). Such review "shall be *de novo*." Id.[6]

In order to obtain relief, Abdi must establish that he is eligible "in every respect" to become a United States citizen. Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967); accord, e.g., Fedorenko v. United States, 449 U.S. 490, 506 (1981) ("No alien has the slightest right to naturalization unless all statutory requirements are complied with."). Among other things, he must show that he was "a person of good moral character" during the five-year "look back" period immediately preceding his application. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1). He bears the burden of proving his good moral character by a preponderance of the evidence, Nyari v. Napolitano, 562 F.3d 916, 919 (8th Cir. 2009) (quoting 8 C.F.R. § 316.2(b)), and all doubts must be resolved against him, Berenyi, 385 U.S. at 637.

---

[6] Section 1421(c) provides that a reviewing court "shall, at the request of the petitioner, conduct a hearing de novo on the application." The word "hearing," however, does not imply a bench trial or evidentiary hearing. E.g., Chan v. Ganther, 464 F.3d 289, 295-96 (2d Cir. 2006) (*per curiam*); Sabbaghi v. Napolitano, No. C08-1641Z, 2009 WL 4927902, at *3 (W.D. Wash. Dec. 11, 2009). Rather, summary judgment may be granted, where appropriate, in naturalization proceedings, see Chan, 464 F.3d at 296; Fed. R. Civ. P. 81(a)(3), and the Court may do so without even holding oral argument, e.g., Abulkhair v. Bush, 413 F. App'x 502, 507 n.4 (3rd Cir. 2011) (*per curiam*).

The INA does not define the term "good moral character," but it "explicitly states what [good moral character] is *not*." United States v. Jean-Baptiste, 395 F.3d 1190, 1193 (11th Cir. 2005) (emphasis in original). The statute lists several categories of persons who cannot establish good moral character as a matter of law, such as those convicted of gambling offenses or aggravated felonies. 8 U.S.C. § 1101(f)(1)-(9). Yet, this list is not exhaustive – the INA also includes a "catch-all" providing that "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." Id.

Pursuant to authority granted by the INA, CIS has issued regulations further defining the types of persons who fall within the statutory catch-all. Those regulations provide that individuals convicted of certain other categories of crimes (such as those "involving moral turpitude") lack good moral character. 8 C.F.R. § 316.10(b)(1)-(2). But the regulations also contain a "catch-all" provision, which is at the heart of this case. In pertinent part, it provides that "[u]nless the applicant establishes extenuating circumstances, [he] shall be found to lack good moral character if, during the [look-back] period, [he] [c]ommitted unlawful acts that adversely reflect upon [his] moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2)." 8 C.F.R. § 316.10(b)(3).

Defendants rely upon this catch-all to argue that Abdi cannot establish good moral character here. They note that the moral-character determination is made on an individualized, case-by-case basis, taking into account "the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). They further note that

Abdi was arrested several times, and convicted twice, during the look-back period, including at least one incident in which a police officer was physically endangered and Abdi was threatened with the use of force while fleeing from apprehension.[7] "Viewing the totality of Abdi's criminal history," Defendants argue, he cannot show "that he possesses the requisite good moral character" for naturalization. (Def. Mem. at 16.) The Court agrees.

In the Court's view, Abdi's conduct during the look-back period did not comport with that of an average citizen in this community. In 2007, he was arrested twice over a five-month span, later admitting (when pleading guilty) that he in fact fled from a police officer (the first arrest) and lied to a police officer (the second arrest).[8] These encounters with law enforcement demonstrate he lacked respect for authority and lacked the willingness to reform his conduct to be law-abiding. Moreover, his second conviction,

---

[7] Although Abdi's convictions were later dismissed after he successfully completed probation, the convictions remain for immigration purposes. CIS regulations provide that a person lacks good moral character if he was "convicted" of certain crimes during the look-back period. 8 C.F.R. § 316.10(b)(3). "There is no statutory definition of 'convicted,' but a 'conviction' is defined to mean a 'formal judgment of guilt of the alien entered by a court.'" Carachuri-Rosendo v. Holder, __ U.S. __, 130 S. Ct. 2577, 2590 (2010) (Scalia, J., concurring) (quoting 8 U.S.C. § 1101(a)(48)(A)). This suggests that Congress intended "the determination of whether an alien is convicted for immigration purposes be fixed *at the time of the original determination of guilt*," Pinho v. Gonzales, 432 F.3d 193, 207 (3rd Cir. 2005) (emphasis added), and accordingly, with limited exceptions not relevant here, an alien remains "convicted" for immigration purposes even if his conviction is later expunged, e.g., Lopez-Vasquez v. Holder, __ F.3d __, 2013 WL 387903, at *1 (9th Cir. Feb. 1, 2013); Pinho, 432 F.3d at 207; see also Ikenokwalu-White v. INS, 316 F.3d 798, 804 (8th Cir. 2003) (immigration judge may consider expunged convictions when evaluating "good moral character" in removal proceedings). Notably, Abdi does not dispute that his now-dismissed convictions remain pertinent to the "good moral character" determination.

[8] In their Reply, Defendants argue "it is possible" these were "crimes involving moral turpitude," automatically disqualifying Abdi from naturalization under 8 C.F.R. § 316.10(b)(2)(i). (Reply at 6-9.) The Court need not so conclude, however, because it finds him ineligible on other grounds.

for lying to the police, also reflects dishonesty. These were not mere technical or regulatory violations, cf. Yin-Shing Woo v. United States, 288 F.2d 434, 435 (2d Cir. 1961) (failure to pay parking tickets did not undermine good moral character), or other "minor" crimes that would pose no impediment to naturalization, see Keaik v. Dedvukay, 557 F. Supp. 2d 820, 828 (E.D. Mich. 2008) (convictions for driving on a suspended license were "insufficient to establish bad moral character by themselves"). Indeed, the fleeing violation was particularly egregious, as Abdi twice failed to comply with commands to stop despite the threatened use of force, led officers on a chase through several levels of a parking ramp, and struggled with officers when he was finally apprehended. Furthermore, he was less than fully candid in his naturalization application, omitting arrests and failing to report that he had been convicted of a crime twice, not once (as indicated). He has nowhere contended that he did not understand the application forms, nor has he offered any other explanation for omitting pertinent information from the application. And while these facts standing alone would be sufficient to deny Abdi relief, the Court notes that his other arrests further undermine his claim of good moral character.[9]

---

[9] Abdi argues that the Court cannot consider arrests that did not result in criminal prosecution or conviction. (Mem. in Opp'n at 22.) The Court disagrees. While arrests standing alone may not be conclusive, the Court may consider them as part of the "big picture" when evaluating Abdi's character. See, e.g., Ni v. U.S. Citizenship & Immigration Servs., No. CV 08-3883, 2009 WL 649156, at *3-4 (C.D. Cal. Mar. 9, 2009) (considering plaintiff's arrests); Golding v. U.S. Dep't of Homeland Sec., No. 05-21095-CIV, 2008 WL 686960, at *7 (S.D. Fla. Mar. 13, 2008) (rejecting assertion that "arrests, without convictions, cannot support a finding that Plaintiff lacks good moral character"). In any event, the Court finds Abdi's two convictions are alone sufficient to determine he lacked good moral character during the look-back period.

Abdi responds that a "particular unlawful act committed by an applicant cannot automatically, by [its] existence alone, disqualify the applicant under the 'catch all' provision." (Mem. in Opp'n at 13.) That may well be true, depending upon the nature of the act in question. But the record here discloses more than a single unlawful act: Abdi had *two* convictions and *multiple* arrests during the look-back period, plus a *lack of candor* in his application. Contrary to his argument, therefore, the facts here do not suggest "a formulaic 'one strike and you're out' approach." (Id. at 14.) Rather, it is the totality of his conduct, over an extended period of time, that belies his contention he satisfied the good-moral-character requirement.

Abdi also argues that extenuating circumstances lessen the impact of his convictions for fleeing and lying to police. (Mem. in Opp'n at 21.) And to be sure, the Court must consider extenuating circumstances, if proven by an applicant, when assessing his moral character. 8 C.F.R. § 316.10(b)(3)(iii). With regard to the fleeing conviction, Abdi notes that he was (1) 20 years old at the time and (2) "part of a group and not specifically shown to have personally thrown rocks or otherwise jeopardized the safety of the police officer." (Mem. in Opp'n at 21.) The Court does not believe either qualifies as an extenuating circumstance. If anything, Abdi's age – above the age of majority – *belies* his contention that his conduct was simply a youthful indiscretion. Furthermore, he suggests that he was not personally involved in throwing rocks at the officer, but as CIS aptly noted when denying his application, "running from a police officer and struggling during an arrest are not the actions [of] a person" uninvolved in

illegal activity. (Def. Ex. 1 at 1.) The fact that he struggled during his arrest is itself sufficient to establish that officer safety was jeopardized.

With regard to the lying conviction, Abdi contends that there exists no evidence he was engaged in any "accompanying criminal act" at the time he lied to the officer. (Mem. in Opp'n at 20.) The Court fails to see how this constitutes an extenuating circumstance. Does it reflect positively on an individual charged with a crime that he is not also charged with some other crime? The Court thinks not. The fact remains, as Abdi admitted by pleading guilty, that he provided a police officer with a false name, an act reflecting dishonesty and inconsistent, in this Court's view, with the moral character of "the average citizen in the community." 8 C.F.R. § 316.10(a)(2).

Abdi's successful completion of probation with respect to his convictions, and his more recent efforts to reform himself and further his education, are commendable. But having conducted a *de novo* review of his April 29, 2010 naturalization application, the Court concludes that as of that date, he was not eligible for naturalization as a matter of law. Accordingly, Defendants are entitled to summary judgment.[10]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, for Summary

---

[10] The Court notes that although this case is in its infancy, summary judgment may be granted "at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), including "before the opposing party has conducted any discovery at all." Alexander v. Pathfinder, Inc., 189 F.3d 735, 744 (8th Cir. 1999). Early summary judgment is "particularly appropriate" in a case such as this one, where "the unresolved issues are primarily legal rather than factual." Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1316 (8th Cir. 1996). Notably, Abdi nowhere asserts that he needs discovery in order to address Defendants' Motion. See Fed. R. Civ. P. 56(d).

Judgment (Doc. No. 12) is **GRANTED**, and Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  February 13, 2013                         s/Richard H. Kyle
                                                 RICHARD H. KYLE
                                                 United States District Judge